# PROVIDENCE COUNTY.

———◆———

OSMOND C. GOODELL, Deputy Sheriff, *vs.* PHINEAS FAIR-
BROTHER, Deputy Sheriff.

H. leased to G. a piano for a month, and from month to month, stipulating that a weekly
payment of $10 should be made, and agreeing that when the weekly or other payments
amounted to $525, G. should have a bill of sale of the piano. The instrument, until
$525 had been paid, was to remain the property of H., and in case of default in any
payment was to be surrendered in good order. This was in February, 1872. In 1874
H. assigned his right in the piano to W. G. paid but $175 of the $525, although the
piano remained in his possession. It was attached March 17, 1875, as the property of
G. and was replevied by W., March 27, 1875.

*Held,* that G. had no attachable interest in the piano.

*Held,* further, that the question whether H. and W., by allowing G. to remain in pos-
session as ostensible owner of the piano, had estopped themselves from denying G.'s
ownership as against G.'s creditors was a question of fact for the jury.

*Held,* further, that G. having bought the piano on condition and having been allowed to
assume the apparent ownership, the burden of proof was on W. to show non-fulfilment
of the conditions of sale.

A new trial will not be granted for error on the part of the court when it is clear from the
record that the error was innocuous.

PLAINTIFF'S petition for a new trial.

This action was trover brought in the Court of Common Pleas
and taken to the Supreme Court by the defendant's appeal. It
was heard by the court in the Common Pleas and was tried to a
jury in the Supreme Court. The plaintiff is a deputy sheriff.
March 17, 1875, a writ in favor of one Theodore Johnson against
one Edgar W. Guild was put into his hands for service and was
served by attachment of a piano as the property of Guild. The
piano was delivered to one Charles Taft as keeper, and was left
by Taft for storage in the warerooms of one James H. Barney.
March 27, 1875, it was taken on a writ of replevin issued against
Barney in favor of the Weed Sewing Machine Company. The
writ of replevin was served by the defendant who, according to
testimony given by both Taft and Barney, was notified at the
time of the service that the piano had been attached by the
plaintiff, as deputy sheriff, and was then in the possession of
Taft as his keeper. The writ of replevin was duly entered in
court and a *nil dicit* judgment was rendered thereon, in favor of

the Weed Sewing Machine Company. On the trial of the case at bar to the jury in this court the plaintiff, having submitted evidence in proof of the facts above recited, claimed that he was entitled to a verdict by virtue of the special property which he had acquired in the piano by the attachment.

The defendant thereupon submitted testimony to show that the piano belonged not to Guild but to the Weed Sewing Machine Company; that the piano was originally the property of Hibbard & Hawkins, and that it came into the possession of Guild under an agreement in writing which was as follows, to wit:

"This agreement, made by and between Hibbard & Hawkins of the first part and Mr. Edgar W. Guild of Providence of the second part, witnesseth that said Hibbard & Hawkins do hereby lease for the period of one month from date, and from month to month thereafter (so long as the stipulations herein are performed, and the payments hereinafter specified are duly made) to said party of the second part, a Decker Bros. piano, numbered 2034 for the sum of        dollars in advance, and ten dollars per week thereafter, to be paid to them at their office on the 2nd day of each week for the use thereof; agreeing, however, that when the sum of five hundred twenty-five dollars shall have been paid for the use of said piano by said advance and monthly payments or otherwise, they will then sell and deliver to the party of the second part said piano with a good and effectual bill of sale thereof.

"And said party of the second part hereby pays the sum of        dollars in advance and agrees to hire and pay for the use of said piano from week to week as aforesaid, ten dollars on each respective second day of the weeks until the full amount of the price above named (525 dollars) shall have been paid. In case of failure to make said payments, or any of them, said party of the second part agrees to deliver up said piano to Hibbard & Hawkins or their order, in as good condition as the same now is, reasonable use and wear thereof excepted; in which case, or in case of a violation of any of the agreements herein mentioned, I hereby authorize, empower, and direct the said Hibbard & Hawkins, or their agent, to enter the premises wherever said piano may be and take and carry the same away; and I hereby exonerate the said Hibbard & Hawkins, their servants and agents, of and

from all and any claim for damages which I might have against said Hibbard & Hawkins, their servants or agents, or any or either of them, for so doing ; it being agreed by the parties hereto, that until the full price of said piano has been paid as above, it is the property of Hibbard & Hawkins, and is not to be removed from 289 Pine Street without their consent ; nor be secreted, disposed of, underlet, or attempted to be sold ; nor be injured by misuse or neglect or by improper management.

" In witness whereof we hereunto subscribe our names.

EDGAR W. GUILD,

" Feb. 12, 1872. HIBBARD & HAWKINS."

It also appeared in testimony that on October 29, 1874, Hibbard & Hawkins assigned their right in the piano to the Weed Sewing Machine Company, and that up to March 27, 1875, when the writ of replevin was served, Guild had not paid more than $175 under the agreement. It also appeared that the defendant in making service of the writ of replevin was accompanied by an agent of the Weed Sewing Machine Company who acted in concert with him.

The jury under instructions given by the court returned a verdict for the defendant. The plaintiff petitioned for a new trial, alleging error in the instructions.

*November* 11, 1878. DURFEE, C. J. The first ground assigned for a new trial is that the court instructed the jury that the plaintiff was not entitled to recover, if the defendant when he took the piano was acting as agent for the general owner ; whereas the plaintiff claimed, and requested the court to charge, that the plaintiff acquired a special property in the piano by the attachment which would entitle him to maintain his action.

It is manifest that the plaintiff could not acquire any property in the piano, otherwise than by estoppel, unless Guild had a property in it which was liable to attachment. But Guild had no attachable property in it ; for by the terms of the contract under which he received the piano it was to remain the property of the vendors until it was fully paid for as stipulated, and at the time of the attachment only $175 of the $525, which under the contract ought to have been paid for it two years previously, had been paid. Guild therefore had merely a possession of the piano, but no right in it, unless possibly he might still in equity

have a right to complete the purchase by paying the residue of the price with interest. But such a right, even if it existed, would not be a right of property, but merely a right resting in contract, and would not be subject to attachment. This view is abundantly supported by authority. *Sage* v. *Sleutz*, 23 Ohio St. 1; *Strong* v. *Taylor*, 2 Hill N. Y. 326; *Van Hoozer* v. *Cory*, 34 Barb. S. C. 9; *Leighton* v. *Stevens*, 22 Me. 252; *Ketcham* v. *Brennan*, 53 Miss. 596; *Burnell* v. *Marvin*, 44 Vt. 277; *Buckmaster* v. *Smith*, 22 Vt. 203; *Hubbard* v. *Bliss*, 12 Allen, 590; *Blanchard* v. *Child*, 7 Gray, 155; *Little* v. *Page*, 44 Mo. 412; *Ridgeway* v. *Kennedy*, 52 Mo. 24; *Southern* v. *Cunningham*, 11 Rich. 533.

The plaintiff contends that Guild had an assignable and therefore an attachable interest. It is doubtful if Guild had any right which he could assign in view of the fact that the time for making the stipulated payments had expired and that he was forbidden by the contract to sell the piano or to suffer it to go out of his possession. But admitting, *causa argumenti*, that the piano might have been sold or assigned by Guild, the purchaser or assignee could certainly not acquire any greater right than Guild himself had, which at the utmost was merely an equitable right resting in contract to complete the purchase, and not such a vested right of property as could be attached. See cases before cited.

The second ground for a new trial is, that the plaintiff requested the court to charge that if the defendant replevied the piano from Barney with the knowledge that it was only stored with him by Taft who was its keeper, the defendant thereby became a wrongdoer and could not set up the title of a third person in defence of his illegal act, and that the court refused this request and charged the jury as before stated.

The request assumes that the piano was irrepleviable from Barney because it was in the custody of Taft as keeper for the plaintiff. Undoubtedly if the plaintiff's attachment had been good, the writ of replevin, inasmuch as it did not run against him or his keeper, would have been no defence to the action; but we do not see how it became unlawful for the defendant to take the piano for its owner on a writ of replevin against Barney with whom it was stored, merely because it was in the custody of a

keeper for the plaintiff under a void attachment, and the defendant was notified by the keeper that he had the custody of it. The attachment being void, the owner of the piano had a right to take it if he could do so without breach of the peace, and therefore the defendant, whether he took it under the writ of replevin or independently of it, inasmuch as he took it for the owner, cannot, in our opinion, be regarded as a mere wrong-doer. If he had taken it for himself or any other person having no right, his position would be very different.

The third ground for a new trial is not pressed.

The fourth ground is, that the plaintiff requested the court to instruct the jury that the time for paying for the piano as stipulated having expired, it could be extended only by a new agreement in writing, and that without an extension the owner had been guilty of laches in suffering the apparent ownership to remain in Guild; and this instruction the court refused. It is argued that the neglect of the owner for two years to enforce the conditions of the contract was calculated to induce the belief that the conditions had been fulfilled and that the owner therefore ought to be estopped from asserting the contrary. But if a neglect for two years was calculated to have this effect, so would be a neglect for less than two years. So that if the argument were pressed home, it would not be safe for the owner to grant any indulgence after the time of payment had expired. No cases are cited to show that such is the law. We think that in any given case the question whether the conditions of the contract have been waived, or whether the owner shall be estopped from asserting that they have not been waived or performed, is a question of fact for the jury, to be determined under the instruction of the court in view of all the circumstances, and not a pure question of law for the court. We think therefore that the court did not err in refusing the request. *Marston* v. *Baldwin*, 17 Mass. 606; *Burbank* v. *Crooker*, 7 Gray, 158; *Bonesteel* v. *Flack*, 41 Barb. S. C. 435.

The last ground is that the court, though requested, refused to instruct the jury that the piano having been sold to Guild on condition, and he having been allowed to assume the apparent ownership, the attaching creditor had a right to consider the piano as Guild's, and it was for the owner to prove that the con-

ditions had not been fulfilled.   We think the court erred in refusing this request.   This was so held in *Leighton* v. *Stevens*, 19 Me. 154.   That the contract amounts to a conditional sale which becomes absolute on performance of the conditions, see *Currier* v. *Knapp*, 117 Mass. 324.

The error would be a good ground for a new trial if there were the slightest reason for believing the plaintiff had been injured by it.   But the defendant had submitted testimony, which was entirely uncontradicted, that only $175 of the $525 which was to be paid for the piano had in fact been paid, so that if the court had given the instruction, it would have been its duty to call attention to the testimony and to the fact that it was uncontradicted, and the result would undoubtedly have been the same. Inasmuch, therefore, as the erroneous instruction did no harm, we do not think a new trial should be granted on account of it. *Edmonson* v. *Machell*, 2 Term Rep. 4 ; *Waters* v. *Waters*, 26 Md. 53 ; *Johnson* v. *Blackman*, 11 Conn. 342 ; *Evans* v. *Commercial Mut. Ins. Co.* 6 R. I. 47.

*New trial denied and judgment for defendant on the verdict.*

*Daniel R. Ballou*, for plaintiff.

*Dexter B. Potter*, for defendant.