In re FENN.

(Circuit Court of Appeals, Second Circuit. March 7, 1910.)

No. 14.

1. INTOXICATING LIQUORS (§ 326*)—SALES—VALIDITY—PLACE.

Claimant's traveling salesman, without authority to extend credit to customers, called on the bankrupt, a druggist and retail liquor dealer in Vermont, and received orders for certain liquors, contemplating a credit of from 60 days to four months, and payment of half the freight by the seller, whose place of business was in Baltimore. The bankrupt, having had some experience with one of claimant's brands, also wrote to it in Baltimore. asking a shipment of three barrels. Both of these orders were first passed on by claimant's credit man in Baltimore, then accepted, and the goods delivered to a common carrier in Baltimore, to be transported to bankrupt in Vermont. *Held*, that both transactions constituted sales in Baltimore, and not in Vermont, and were not therefore subject to the Vermont laws regulating the sale of liquors.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 469; Dec. Dig. § 326.*]

2. INTOXICATING LIQUORS (§ 326*)—SALES—REGULATIONS—STATUTES.

V. S. 5102, providing that no person shall furnish, sell. or expose or keep with intent to sell, intoxicating liquors, except as authorized by the chapter, and 5140, providing that no person shall sell liquors at wholesale without having secured a license as provided in the chapter, etc., refers only to the furnishing, selling. exposing, or keeping of intoxicating liquors within the state, and does not prohibit the purchase of liquors without the state for shipment and sale therein.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 469; Dec. Dig. § 326.*]

3. INTOXICATING LIQUORS (§ 327*)—SALES—AGENT'S AUTHORITY—STATUTES—EFFECT.

V. S. 5139, provides that no person for himself or for any other person, either in person, by mail, or in any other manner shall solicit orders, offer for sale, or in any manner traffic at wholesale in intoxicating liquors under a license of the fourth class without securing from the Secretary of State a certain certificate. *Held*, that where a salesman holding a fourth-class license to solicit business for a resident dealer without a license solicited the business for claimant, a nonresident company, such solicitation, though unlawful, did not affect the validity of a contract of sale pursuant thereto, made in another state.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. §§ 467–473; Dec. Dig. § 327.*]

Appeal from the District Court of the United States for the District of Vermont.

In the matter of bankruptcy proceedings of Frederick Fenn. From an order of the Vermont District Court, sitting in bankruptcy, affirming a referee's order disallowing a claim of the Garrett-Williams Company for liquor sold to the bankrupt, it appeals. Reversed.

See, also, 172 Fed. 620.

Joseph S. Graydon, W. M. Hough, A. B. Hayes, Levi Cooke, and James A. Merrill, for appellant.

William H. Botsford and W. B. C. Stickney, for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

LACOMBE, Circuit Judge. Fenn, the bankrupt, was a druggist in Rutland, Vt., where he had duly qualified under the Vermont statutes as a retail liquor dealer. The Garrett-Williams Company is engaged in the wholesale liquor business in Baltimore, Md., and the claim is for liquors sold to Fenn from May to July, 1907. As to all the items save Exhibit B, the referee held that all the sales to Fenn were "in violation of the law of the state of Vermont and therefore illegal and claim therefor is disallowed." As to Exhibit B, he held that the sale to Fenn was "under contract partly made in this state and is therefore unenforceable and claim for the purchase price of said liquor is disallowed." The district judge affirmed without opinion.

As to all items other than Exhibit B the facts are these: One George J. Garrett, who was a traveling agent for the Garrett-Williams Company called upon Fenn and solicited him to purchase goods from it. They talked over the matter of various goods of the brands that Fenn wanted, and he gave orders for them. The proposition contemplated a credit of 60 or 90 days or 4 months, depending on the class of goods and half of the freight from Baltimore to be allowed by the seller in order to equalize with purchases from New York houses. Garrett testified that he sent these orders on to the house "to be accepted or rejected by them as they usually proceed in such cases." Fenn testified that nothing was said about the house having to pass on his orders, and that he knew nothing about such orders being taken subject to acceptance by the house. Joseph B. Garrett, the treasurer and credit man, testified that George J. was merely a traveling salesman soliciting orders on the road, and that he had no authority, either general or special, to extend credit to customers; that the witness as credit man passed upon these orders of Fenn, "passing upon their worth and determining the filling of the same." When the orders had been passed upon by him, the goods were taken out of the warehouse and delivered to a common carrier in Baltimore to be transported to Fenn. Fenn's negative testimony in no way tends to establish authority in George Garrett to bind the company, and it is quite clear upon this record that the minds of both parties, in the case of each sale, met in Maryland, where Fenn's orders were passed upon and approved as to all terms. The contract of sale, therefore, was not made in Vermont. The case is still stronger as to Exhibit B. Fenn had some experience with one of claimant's brands, known as "Old 49." Wishing some more of the same, he wrote to the company in Baltimore, asking them to send three barrels. There can be no pretense that there was any contract of sale in this instance until his order was accepted. He was given 90 days' credit. The circumstance that, if upon receipt of any of these goods they were found not up to sample or not as represented or insufficient in gauge, Fenn might return them, is immaterial. Such return would be for breach of warranty.

The next question is whether these contracts of sale or any of them were illegal, so that a claim for the agreed price of goods delivered under them cannot be maintaind. Various provisions in the statutes of Vermont have been referred to and are relied on.

Section 5102:

"No person shall furnish or sell, or expose or keep with intent to sell, any intoxicating liquor, except as authorized by this chapter."

Manifestly this refers to the furnishing, selling, exposing, or keeping within the state of Vermont. This liquor was kept, sold, and furnished (delivered) to the purchaser in the state of Maryland.

Various sections provide for licenses of different classes. Those of the "fourth class" for wholesale traffic in intoxicating liquor are to be granted only by the Secretary of State.

Section 5139:

"No person for himself, or for any other person, persons or corporations, either in person, by mail or in any other manner, shall solicit orders, offer for sale or in any manner traffic at wholesale in intoxicating liquor by virtue of or under a license of the fourth class, without having secured from the secretary of state the certificate prescribed by the preceding section. A person who violates a provision of this section shall be fined one hundred dollars with costs of prosecution for each offense."

By its terms this section applies to a person who solicits, offers, or traffics "under a license of the fourth class." George Garrett held a certificate authorizing him to solicit business for F. M. Brown of Barre City, Vt., holder of a fourth-class license, but he held none authorizing him to solicit for the Garrett-Williams Company. If it be held that his solicitation within the state was unlawful, it is difficult to see how that can affect a contract which was made without the state.

Section 5140:

"No person or corporation shall sell intoxicating liquors at wholesale without having secured a license as provided in this chapter. A person or corporation that violates a provision of this section shall be fined three hundred dollars with costs of prosecution for the first offense and five hundred dollars with costs of prosecution for each subsequent offense."

Manifestly this refers to sales within the state.

We do not find in the decisions referred to in the briefs sufficient authority for holding this contract illegal, and not enforceable in Vermont. In Territt v. Bartlett, 21 Vt. 183, "the contract of sale was closed between the parties at Brandon, Vermont." In Bancroft v. Dumas, 21 Vt. 456, Boutwell v. Foster, 24 Vt. 485, Briggs v. Campbell, 25 Vt. 704, Buck v. Albee, 26 Vt. 184, 62 Am. Dec. 564, and In re Lemerise & Co., 73 Vt. 304, 50 Atl. 1062, the sales were made within the state by a person not licensed to sell. In Starace v. Rossi, 69 Vt. 303, 37 Atl. 1109, order was taken by agent, sent to New York, and there accepted. What authority the agent had does not appear. All that is said on this branch of the case is:

"The contract was, in part at least, made in this state, and that prevents recovery as effectually as though it had been wholly made here. Backman v. Wright, 27 Vt. 187, 65 Am. Dec. 185; Backman v. Mussey, 31 Vt. 547."

Referring to these citations, we find that in Backman v. Wright the purchaser, being unlicensed, had no right under the laws of Vermont to buy or hold the liquor. This fact was known to the soliciting agent of the seller and his knowledge was imputed to his principal, who was denied relief as a participant in an illegal transaction within the

state. Fenn, however, was duly licensed as a retail liquor dealer. In Backman v. Mussey, supra, there is nothing to show that the soliciting agent did not have authority to make a binding contract. The contract between agent and purchaser was made in Vermont. As to deliveries thereunder plaintiff was defeated, but, as to deliveries upon subsequent orders by mail direct from the purchasers, plaintiff recovered. In Gaylord v. Soragen, 32 Vt. 110, 76 Am. Dec. 154, the sale was made in New York, but the seller knew the purchaser intended to use the goods in Vermont contrary to law and to prevent seizure for violation of statute marked the goods in a peculiar way at purchaser's request. It was held that he had so far participated in defendant's illegal design that he could not recover the price in the courts of Vermont. In Beverwick Brewing Co. v. Oliver, 69 Vt. 323, 37 Atl. 1110, although orders were sent by mail and telegram to Albany and the goods delivered there to a common carrier, these orders merely gave details of requirements from time to time under a contract which the authorized agent of the seller had theretofore made with the purchaser in the state of Vermont.

We find nothing to constrain a decision that claimant is not entitled to prove his claim for the price of goods which were sold under a contract made in Maryland and delivered in that state to a common carrier for transportation to the bankrupt.

The order of the District Court is reversed.